*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0349p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

MICHAEL BIGELOW,

     *Petitioner-Appellee,*

  *v.*

        No. 07-3340

JAMES S. HAVILAND, Warden,

     *Respondent-Appellant.*

Filed: September 29, 2009

Before: MERRITT, COLE and SUTTON, Circuit Judges.

————————————

## ORDER

————————————

In its petition for rehearing, the State claims that "fundamental factual errors" formed the "underpinnings of [our] decision." Pet. at 1. We disagree.

At Michael Bigelow's criminal trial, alibi witness Vernon Greenlee maintained that on June 17, the day the crime occurred in Toledo, Ohio, he worked with Bigelow at Gary Chasin's house in Columbus—150 miles away. Bigelow's counsel called no other witnesses to bolster Greenlee's testimony, and the jury convicted Bigelow of kidnapping, assault and arson. Since the conviction, three witnesses, who could have corroborated Greenlee's account but whom counsel never identified, have emerged: Victor Timler, Jay Loyzelle and Christine Ceresna-Patridge. Because counsel could have uncovered these witnesses with minimal additional investigation, and because the combined effect of their testimony could have made a difference at a trial where weak eyewitness accounts supplied the State's only evidence, we held that counsel provided constitutionally ineffective assistance and that the state court unreasonably applied *Strickland* in concluding otherwise.

1

Insisting that we missed the mark, the State's petition focuses on a factual dispute: Did Victor Timler work at Chasin's house, and see Bigelow there, on June 16 or June 17? If it was June 16, then his testimony and the testimony of Jay Loyzelle, who had no independent recollection of the date he saw Bigelow at Chasin's house other than that it was on "the day Victor Timler was there," JA 370, would have done little to help Bigelow's defense. But if it was June 17, then the testimony of Timler and Loyzelle—along with the testimony of Ceresna-Patridge—would have supported Greenlee's alibi testimony.

The State's strongest evidence that Timler worked at Chasin's home on June 16, but not on June 17, is a handwritten "job cost" sheet introduced at his 2004 deposition. *See* JA 145, 148, 166. The sheet, which purports to "show[] each person, what day they were on the job and how much time they spent at the job site," JA 180, places Timler at Chasin's only on June 16, JA 166.

We did not give the job-cost sheet dispositive weight, however, because Timler testified that *other* records place him at Chasin's home on June 17. *See* JA 723–24 (1999 post-conviction hearing); *see also* JA 153–54 (2004 deposition). The State responds that "there are no records to the contrary," Pet. 5, in the state or federal post-conviction files. But we did not rely on the other records themselves; we relied on Timler's testimony about what those records say. And that testimony gives ample reason to doubt the job-cost sheet's accuracy. When asked at the 1999 post-conviction hearing, "[w]hat do your records reflect about the work that you personally did on June 17th of 1993?" Timler responded that he "was [at Chasin's] to put in a liquid level sensor." JA 723–24. At that point, he assuredly was referring to a record other than the job-cost sheet, which logs the hours he worked but says nothing about the tasks he completed. JA 166. And at that point, to the extent the State was dissatisfied with Timler's reliance on records not admitted into evidence or otherwise used to recollect the events of June 17, it had the right to seek the records from Timler. So far as the 1999 hearing shows, however, the State never made any such request.

Had a jury heard Timler's testimony about what his records showed, as opposed to what the job-cost sheet showed, it reasonably could have credited Timler's account. As Timler testified, "the first thing we did was check [the date]," that "the reason why [he] came [to testify] is . . . because we were there at that time" and that he "wouldn't have wasted . . . a

couple grand [in lost earnings] for [him and his employees] to be [at the post-conviction hearing]" if the records had not shown that he was there on June 17. JA 707–08.

Five years later, at Timler's 2004 deposition in connection with the federal habeas proceeding, his testimony adds further doubt to the accuracy of the job-cost sheet. There, Timler acknowledged "a good possibility" that a "service sheet" they could no longer locate documented when he worked at Chasin's and what services he performed there. JA 148. The service-invoice sheet, which he "thought" had turned up before he testified in 1999, JA 157, may well have informed his prior conclusion that June 17 was "the date [he] was there." JA 707. (Adding support to this point, Ceresna-Patridge testified that she "might have had more paperwork . . . that had the written-up words of who did what and what time and what day" and "assum[ed] that . . . [they] had that" information before the 1999 post-conviction hearing. JA 190.) This possibility could well have made all of the difference, for when Timler was asked "if the service sheet shows you were there on the 17th, rather than [the job-cost sheet], would the service sheet . . . override [the job-cost sheet]?" Timler answered "[p]robably, because [the service sheet] was a billing mechanism." JA 154.

The State downplays all of this, focusing on Timler's statements that—based on the job-cost sheet—he may have been at Chasin's home on June 16. Pet. 5, JA 145–47; *see also* JA 155. But Timler's testimony is not as "clear[] and unequivocal[]" as the State maintains. *See* Pet. 5. At his deposition, Timler said he was there on June 16 "[u]nless the service invoice says otherwise," JA 155, and that "my job cost says that I was there [on June 16]" but "maybe on the service invoices it says otherwise," JA 159. That Timler said he may have been there on the date the job-cost sheet suggests and that the job-cost sheet and service invoice would "probably reflect" the same date, JA 155, by no means eliminates the reasonable possibility, supported by his other testimony, that he was there on June 17. Had counsel identified Timler, and called him at trial, the jury could have decided how much weight to give to the job-cost sheet.

Keep in mind that Timler's (and for that matter Loyzelle's and Ceresna-Patridge's) testimony did not need perfect congruence with the job-cost sheet to help Bigelow's defense. *See Ramonez v. Berghuis*, 490 F.3d 482, 490–91 (6th Cir. 2007). With one alibi witness already testifying that Bigelow was at the Chasin home on June 17, their value was to

strengthen the inference that reasonable doubt existed as to Bigelow's presence at the crime scene.  Their testimony would have done just that.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____

Clerk